UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 1-800-DOCTORS, INC., <br><br>    Plaintiff/Counterclaim Defendant, <br><br>v. <br><br>MM & JF INVESTMENTS, LLC, <br><br>    Defendant/Counterclaim Plaintiff/Third-Party Plaintiff, <br><br>v. <br><br>WILLIAM M. LAUFER, ESQ. *et al.*, <br><br>    Third-Party Defendants. | Case No. 21–cv–17559–ESK–SAK <br><br><br>OPINION |

**KIEL, U.S.D.J.**

    **THIS MATTER** concerns which party has priority over certain collateral. Because the facts, through the parties' written agreements and filings to secure their interests, favor defendant's security interest over the collateral, summary judgment will be granted in defendant's favor.

    **I.  BACKGROUND**

        **A.  Underlying Agreements**

    On April 20, 2011, William T. Grant, Meridian Health Management, Inc. (Meridian), and other new lenders (together with Grant and Meridian, "2011 Lenders") entered into an amended and restated intercreditor agreement (Intercreditor Agreement). ((ECF No. 123 (Mov. Br.) p.10 (citing ECF No. 111–1 (SOMF) ¶1).) Third-party defendant William M. Laufer, Esq. is the collateral agent for the 2011 Lenders. (SOMF ¶2.)

On April 19, 2016, plaintiff 1-800-DOCTORS, Inc. (1-800-DOCTORS) and defendant MM & JF Investments, LLC (MM & JF) entered into several agreements. (*Id.* ¶¶3–5.) First, they entered into a securities purchase agreement (Purchase Agreement). (*Id.* ¶3; *see* Declaration of Vincent Puma (Puma Dec.), Ex. B, ECF No. 111–5.) Second, they entered into a 10% senior secured convertible promissory note with an original principal amount of $4 million with 1-800-DOCTORS as debtor and MM & JF as creditor (Senior Note). (SOMF ¶4; *see* Puma Dec., Ex. C, ECF No. 111–6.) Third, they entered into a 10% subordinated secured convertible promissory note with an original principal amount of $2 million with 1-800-DOCTORS as debtor and MM &JF as creditor (Junior Note) (together with the Senior Note, "Secured Notes"). (SOMF ¶5; *see* Puma Dec., Ex. D, ECF No. 111–7.) The Secured Notes require 1-800-DOCTORS to pay 10% interest per year on the initial principal balances, payable upon the maturity date in April 2020. (SOMF ¶¶7, 10.) Each Secured Note also requires 1-800-DOCTORS to pay default interest of 18% per year following any "event of default" as defined in each Secured Note. (*Id.* ¶¶8, 11.) Failure to pay the principal and interest due by the maturity date qualifies as an "event of default." (*Id.* ¶¶9, 12.) Upon an "event of default," the default sum, including the outstanding principal, any accrued and unpaid interest, and default interest, shall become immediately due and payable. (*Id.*)

1-800-DOCTORS has made no payments toward either principal or interest on either Secured Note. (*Id.* ¶13.) As a result of the default, 1-800-DOCTORS owes MM & JF over $13 million on the Senior Note and nearly $7 million on the Junior Note, including principal, regular interest, and default interest on each. (*Id.* ¶¶15, 16.)

Also on April 19, 2016, 1-800-DOCTORS and MM & JF entered into a security agreement in favor of MM & JF (Security Agreement). (*Id.* ¶19; *see*

Puma Dec. Ex. E, ECF No. 111–8.) The Security Agreement contains a broad definition of "collateral." (SOMF ¶ 20.) It also provides that 1-800-DOCTORS granted a security interest in it collateral to MM & JF's collateral agent. (*Id.* ¶ 21.) Here, MM & JF acted as its own collateral agent, so the security interest falls to MM & JF itself. (*Id.* ¶ 22.) The Security Agreement provides that any security interests created may be perfected by filing Uniform Commercial Code (UCC) statements. (*Id.* ¶ 23.) As part of the Security Agreement, 1-800 DOCTORS and 83% of the 2011 Lenders executed a modification agreement. (*Id.* ¶¶ 32, 33; *see* Puma Dec. Ex. I, ECF No. 111–12.)

Also on April 19, 2016, MM & JF entered into a subordination agreement with 1-800-DOCTORS, Grant, and Meridian (Subordination Agreement). (SOMF ¶ 25; *see* Puma Dec., Ex. G, ECF No. 111–10.) The Subordination Agreement establishes that MM & JF's Junior Note takes priority over all other notes and secured interests held by Meridian and Grant "regardless of the order or time of attachment, or the order, time[,] or manner of perfection." (SOMF ¶ 27.) The Subordination Agreement further makes the 2011 Lenders and MM& JF responsible for perfecting and maintaining perfection of any lien on 1-800-DOCTORS' collateral. (*Id.* ¶ 28.) Pursuant to the Subordination Agreement, Grant and Meridian may not challenge MM & JF's security interest and priority on 1-800-DOCTORS collateral.[1] (*Id.* ¶ 29.)

### B. Financing Statements.

On April 25, 2011, the 2011 Lenders filed a UCC financing statement with the Delaware Department of State to secure their interest under the

---

[1] MM & JF argues that Laufer cannot challenge MM & JF's lien or priority based on this waiver because Laufer represents Meridian and Grant. (Mov. Br. pp. 16–17.) Laufer counters that he does not represent Grant or Meridian. (ECF No. 118–1 ¶ 30.) I need not reach this issue because MM & JF is entitled to summary judgment on its counterclaims against 1-800-DOCTORS regardless of Laufer's opposition.

3

Intercreditor Agreement (2011 Financing Statement). (*Id.* ¶ 34; *see* Puma Dec. Ex. F, ECF No. 111–9.) The 2011 Financing Statement expired on April 25, 2016. (SOMF ¶ 35.)

On April 28, 2016, after entering into the Security Agreement, MM & JF filed a UCC financing statement with the Delaware Department of State to secure its lien on 1-800-DOCTORS' collateral (2016 Financing Statement). (*Id.* ¶ 36; *see* Puma Dec., Ex. J, ECF No. 111–13.) Consequently, as of April 28, 2016, only MM & JF had a perfected UCC financing statement as to a security interest on 1-800-DOCTORS' collateral because the 2011 Financing Statement had expired on April 25, 2016. (SOMF ¶ 38.) On April 9, 2021, the 2016 Financing Statement was extended for another five years. (*Id.* ¶ 37.)

It was not until April 14, 2021 (*i.e.* five days *after* MM & JF's filing of its 2016 Financing Statement), that the 2011 Lenders filed a new financing statement. (*Id.* ¶ 39.)

### C. Settlement Agreement, 2023 Modification Agreement, and Consent to Foreclosure

As a part of this case, on March 22, 2023, 1-800-DOCTORS and MM & JF entered into a settlement agreement (Settlement Agreement) and modification agreement (2023 Modification Agreement). (*Id.* ¶ 42; *see* Puma Dec. Ex. K, ECF No. 111–14.) Pursuant to the 2023 Modification Agreement, the 2011 Lenders who signed the 2023 Modification Agreement agreed to share in a *pari passu* secured position with MM & JF with respect to the Senior Note.[2] (SOMF ¶ 45.) The Settlement Agreement requires 1-800-DOCTORS to repurchase the Secured Notes within 210 days, after which MM & JF would be

---

[2] Although MM & JF's statement of material facts and moving brief only refer to the "Note" in the context of the 2023 Modification Agreement, (*see* Mov. Br. p. 19), it is clear from context and from the 2023 Modification Agreement itself that "Note" refers to the Senior Note. (*See* ECF No. 111–14 pp. 2, 9 (Settlement Agreement and 2023 Modification Agreement defining the Senior Note as the "Note").)

4

entitled to foreclose on 1-800-DOCTOR's collateral pursuant to the Security Agreement.  (*Id.* ¶¶ 43, 44.)  As a part of the Settlement Agreement, 1-800-DOCTORS also executed a consent to foreclosure, which was filed with the court on December 6, 2023 (ECF No. 57–1) and entered by the court on April 4, 2024 (ECF No. 82 (Consent to Foreclosure)).  (*Id.* ¶ 48; *see also* ECF No. 81 (Consent Order).)

1-800-DOCTORS did not purchase the Secured Notes, Purchase Agreement, and Security Agreement within 210 days of the Settlement Agreement, and MM & JF proceeded with the foreclosure of the collateral. (SOMF ¶ 52.)

### D.     **Procedural History**

1-800-DOCTORS initiated this case on September 24, 2021 (ECF No. 1). On November 2, 2021, 1-800 DOCTORS filed the operative amended complaint, seeking declaratory, injunctive, and equitable relief regarding MM & JF's secured position over 1-800-DOCTORS' collateral.  (ECF No. 3.)  On April 22, 2024, MM & JF filed a second amended counterclaim and third-party complaint seeking to foreclose on its security interest in 1-800-DOCTORS' collateral (First Cause of Action) and seeking a declaration from the court that the Secured Notes are secured by a first lien on 1-800-DOCTORS' assets (Second Cause of Action)  (ECF No. 85.)

MM & JF filed a motion for summary judgment (Motion) against 1-800-DOCTORS and Laufer.  (ECF No. 111.)  MM & JF included a statement of material facts (SOMF) and brief in support of the Motion (Mov. Br.).[3]  Laufer

---

[3] Although MM & JF attempted to revise its brief to include an appropriate statement of material facts in the brief (*see* ECF Nos. 123, 124), no such statement appears in the amended brief.  Accordingly, for clarity, I cite the facts as stated in the original Motion filing (*see* ECF No. 111–1) and to the argument as stated in the moving brief (ECF No. 123).

5

filed opposition to the Motion (ECF No. 118 (Opp'n Br.)), to which MM & JF replied (ECF No. 125 (Reply)).[4]

## II.  STANDARD

### A.  <u>Motions for Summary Judgment</u>

Federal Rule (Rule) of Civil Procedure 56(a) dictates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party" and is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant "bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

---

[4] I note that the only opposition to the motion comes from Laufer. Plaintiff did not file an opposition to the Motion because 1-800-DOCTORS waived all challenges to MM & JF's security interest under the terms of the Settlement Agreement and Consent to Foreclosure. (SOMF ¶¶ 44, 49.)

Local Civil Rule 56.1 requires movants to "furnish a statement which sets forth material facts as to which there does not exist a genuine issue." L. Civ. R. 56.1(a). The rule further requires that the party opposing summary judgment file a responsive statement of material facts responding to each paragraph of the movement's statement, asserting agreement or disagreement, "and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." *Id.* Any statement that is not clearly and substantively denied with an appropriate citation to the record is deemed admitted pursuant to Local Civil Rule 56.1. *See Coastal Jersey Holdings, LLC v. Giordano*, 22–02024, 2023 WL 7545301, at *5 (D.N.J. Nov. 14, 2023); *see also* Fed. R. Civ. P. 56(e) (stating that—upon a party's failure to properly address an assertion of fact—a court may provide an opportunity to address that fact, consider the fact undisputed, grant summary judgment if the movant is entitled to it, or issue any other appropriate order).

The court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," and credibility determinations are for the fact finder. *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. There is no genuine dispute of material fact.

This case centers on the terms of financing contracts negotiated by sophisticated commercial actors and the remedies available to creditors seeking to enforce those remedies following debtor's default. Because the agreements contain merger clauses confirming that the written agreements represent the entirety of the agreement between the parties, little can be done by Laufer to

7

create a genuine dispute of material fact.[5] (*See, e.g.*, ECF No. 111–8 p. 11 ¶ 8(i) (Security Agreement merger clause stating that the "Transaction Documents" (which includes the Security Agreement, Purchase Agreement, Secured Note, and Subordination Agreement) contain the entire agreement).). In short, the documents say what they say, and I must apply the law to the parties' rights under the agreements. Moreover, 1-800-DOCTORS—the only other party to the Security Agreement—has waived its right to challenge the relief sought in the Motion. (SOMF ¶ 44.) Because Laufer does not present any factual dispute that might affect the outcome of this lawsuit or could lead a reasonable jury to return a verdict for Laufer, summary judgment is appropriate. Laufer's response (ECF No. 118–1) to MM & JF's Statement of Material Facts does nothing to help his cause. It denies either in whole or in part, four allegations in MM & JF's statement of undisputed material facts. In fact, Laufer responds to nearly every allegation by saying that he "neither admit[s] nor den[ies]" a particular fact, based on lack of knowledge or because a "document speaks for itself." (ECF No. 118–1). As Laufer has not clearly and substantively denied these facts, with citations to the record, I am required to deem them admitted. *See Coastal Jersey Holdings, LLC*, 2023 WL 7545301, at *5.

### B.   First Cause of Action – Foreclosure

#### 1.   Party Arguments

MM & JF argues that 1-800-DOCTORS' default on the Secured Notes and Consent to Foreclosure entitle MM & JF to foreclose on 1-800-DOCTORS' assets. (Mov. Br. pp. 26–31). Although Laufer admits that the "[Secured] Notes, which became due and payable in April 2021, were not paid, causing a default," (Opp'n Br. p. 5) Laufer counters that the Senior Note was unsecured

---

[5] Laufer does not help his argument by failing to include his own numbered statement of material facts and instead relying on declarations that themselves barely cite to any record evidence. (Opp'n Br. p. 7; *see* ECF No. 118–2, 118–3, 118–8.)

(*id.* pp. 5, 9–12) and that failure of a condition precedent invalidates MM & JF's security interest in the Junior Note (*id.*, pp. 13–16). I find that the uncontroverted terms of the agreements permit MM & JF to foreclose on 1-800-DOCTORS' collateral.

### 2. <u>Analysis</u>

New Jersey law applies. (ECF No. 116.) New Jersey has adopted the UCC. *See* N.J. Stat. Ann. § 12A:1–101, *et seq.* (NJUCC). The NJUCC defines "negotiable instrument" as:

> [A]n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, … .

N.J. Stat. Ann. § 12A:3–104a. A negotiable instrument is a "note" if it is a promise. *Id.* § 3–104e. Negotiable instruments become due on the day after the due date specified in the contract, and they become overdue after the accelerated due date. *See id.* § 12A:3–304(b)(2), (3).

An enforceable security interest attaches against the debtor and third parties if value is given, the debtor has rights to the collateral, and an authentic security agreement exists that describes the collateral. *See id.* § 12A:9–203(a), (b). When a debtor defaults on a secured note, the secured party has the right to enforce its security interest, including by foreclosing on the collateral. *Id.* § 12A:9–601(a)(1).

Here, the Secured Notes meet the definition of "negotiable instruments." They serve as 1-800-DOCTORS' promise to repay the $6 million principal from MM & JF, plus 10% annual interest, within four years. (SOMF ¶¶ 4, 5, 7, 10.)

9

1-800-DOCTORS has not kept its promise to pay, (*id.* ¶¶ 13, 48, 52), and MM & JF may enforce its security interest from the Secured Notes by foreclosing on 1-800-DOCTORS' collateral. N.J. Stat. Ann. §12A:9–601(a)(1).

Moreover, 1-800-DOCTORS has admitted its default and consented to MM & JF's foreclosure. (*See generally* Consent to Foreclosure, ECF No. 82.) And the court may enforce the Consent to Foreclosure, for which the court also entered a consent order (ECF No. 81). *See Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 317–18 & n.9 (3d Cir. 1990) (stipulation "so ordered" by district court was "the functional equivalent, and has the same effect as, a consent order or consent decree," and was "subject to continued judicial policing" (citation omitted); *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 198 (3d Cir. Nov. 16, 2012) (district court retains jurisdiction over agreement embodied in court order based on "its inherent authority to manage its proceedings, vindicate its authority, and effectuate its decrees") (citation omitted). Accordingly, the Motion will be GRANTED as to the First Cause of Action.

### C. Second Cause of Action – Declaratory Judgment

#### 1. Party Arguments

MM & JF argues that it has a first priority security interest over the collateral. (Mov. Br. pp. 31–34.) Laufer counters that the Junior Note was subordinate to the 2011 Investors' first security interest. (Opp'n Br. pp. 17, 18.). MM & JF has the winning argument.

#### 2. Analysis

Under the NJUCC, security interest priority is determined by the order in which the interest is perfected, such as by the filing of a financing statement. *See* N.J. Stat. Ann. §12A:9–322(a)(1) ("Conflicting perfected security interests … rank according to priority in time of filing or perfection.") However,

financing statements are only effective for five years, and failure to file a continuation of a filing statement prior to the end of the five-year period results in a lapse. *Id.* § 12A:9–515(a), (c). Upon lapse, the security interest loses perfection, and the secured creditor loses its priority. *Id.* § 12A:9–515(c).

Here, it is evident that MM & JF has the first priority over the collateral. The 2011 Lenders filed the 2011 Financing Statement on April 25, 2011. (SOMF ¶ 34.) That statement lapsed on April 25, 2016. (*Id.* ¶ 35.) And three days later, MM &JF filed its financing statement on the same collateral. (*Id.* ¶ 36.) From then on, MM & JF had priority over the 2011 Lenders for 1-800-DOCTORS' collateral. *See* N.J. Stat. Ann. § 12A:9–515(c).

Laufer has presented nothing more than conjecture and speculation to refute MM & JF's claim. He argues that a "WHEREAS" clause in the Security Agreement somehow created a condition precedent requiring a Subordination Agreement in favor of the 2011 Lenders that was never completed. (*See* Opp'n Br. pp. 13–16.). Laufer ignores the actual Subordination Agreement (ECF No. 111–10), which explicitly makes the 2011 Lenders' security interest subordinate to MM & JF's interest through the Junior Note. (Subordination Agreement pp. 3–4, § 1(a).) Both the 2011 Lenders and MM & JF had the ability to perfect and maintain their security interests. (SOMF ¶ 28.) MM & JF perfected its security interest while the 2011 Lenders let their security interest lapse. (*Id.* ¶¶ 35–39.) Accordingly, I find, as a matter of law, that the uncontroverted documents grant to MM & JF a first priority security over 1-800-DOCTORS' collateral, shared *pari passu* with the 2011 Lenders who signed the 2023 Modification Agreement.

Accordingly, the Motion will be GRANTED as to the Second Cause of Action.

### D.     Breach of the Covenant of Good Faith and Fair Dealing

In his opposition, Laufer asserts that MM & JF breached the implied covenant of good faith and fair dealing. (Opp'n Br. pp. 19–21.) MM & JF argues that Laufer cannot raise this issue for the first time at the summary judgment stage, and even if he could, the argument fails on the merits. (Reply Br. pp. 14–19.)

Assuming, without deciding, that Laufer can raise this argument for the first time in an opposition to a motion for summary judgment, Laufer's argument is without merit.[6] Laufer claims that MM & JF's representative, Mario Monello, acted in bad faith because he should have known about and told 1-800-DOCTORS and Laufer that the 2011 Financing Statement would lapse. (Opp'n Br. p. 19.) The opposition brief relies on passive assertions and conjecture rather than legal authority and record evidence to support the claim. (*See, e.g.*, *id.* p. 20 ("It is submitted on behalf of Laufer that [Monello's inaction] constitutes bad faith.").) Further, Laufer admits that "[t]he Subordination Agreement leaves responsibility for perfecting and maintaining perfection of any lien on the collateral to the 2011 Lenders and [MM & JF]." (SOMF ¶ 28; *see* ECF No. 118–1 ¶ 28 (Laufer neither admitting nor denying this fact).) Because Monello had no responsibility under the Subordination Agreement to maintain perfection of the 2011 Financing Statement, Laufer's claim fails and cannot defeat summary judgment. *See Kare Distrib., Inc. v. Jam Labels & Cards LLC*, 09–00969, 2012 WL 266386, at *7 (D.N.J. Jan. 30, 2012) (recognizing that a claim for breach of the implied covenant of good faith and

---

[6] I consider this issue because MM & JF had an opportunity to address it in its reply brief. *See Ragland v. Comm'r N.J. Dep't of Corr.*, 717 F. App'x 175, 179 n. 4 (3d Cir. 2017) (no prejudice in district court's consideration of a new claim raised for the first time in response to summary judgment motion, where both parties briefed the issue).

fair dealing fails "when the conduct at issue is governed by the terms of an express contract").

## IV. CONCLUSION

For the foregoing reasons, MM & JF's motion for summary judgment (ECF No. 111) will be GRANTED.  An appropriate order accompanies this opinion.

                                                 */s/ Edward S. Kiel*
                                                 **EDWARD S. KIEL**
                                                 **UNITED STATES DISTRICT JUDGE**

Dated: January 26, 2026